# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ACOSTA, | Case No. 1:25-cv-00240-JLT-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT WITH REDUCTION IN ATTORNEYS' FEES |
| v. | |
| ALL AMERICAN GLASS, INC., et al., | |
| Defendants. | ORDER REQUIRING SERVICE ON DEFENDANTS WITHIN THREE DAYS |
| | (ECF No. 10) |
| | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court is Plaintiff Jose Acosta's ("Plaintiff") motion for default judgment. Plaintiff seeks default judgment against Defendants All American Glass, Inc. and Laura M. Williams, Trustee of the Donald A. Williams Exemption Trust ("Defendants"). No opposition to the motion was filed. On July 30, 2025, the Court held a hearing on the motion, at which no appearance was made on behalf of Defendants. Having considered the moving papers, the declarations and exhibits attached thereto, Defendants' nonappearance at the hearing, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Plaintiff's motion for default judgment, subject to a reduction in attorneys' fees.

/ / /

/ / /

1

# I.

## BACKGROUND

### A.    Procedural History

On February 24, 2025, Plaintiff filed this action against Defendants.  (ECF No. 1.) Defendants did not respond to the complaint.  On April 10, 2025, Plaintiff requested an entry of default be entered against Defendants (ECF No. 6), and the Clerk of the Court entered an entry of default the same day (ECF Nos. 7, 8.)

On Jun 11, 2025, Plaintiff filed a motion for default judgment against Defendants.  (ECF No. 10.)  Defendants did not file an opposition to the motion nor otherwise appear in this action. The deadline to file an opposition has expired.  See L.R. 230(c).

On July 30, 2025, the Court held a hearing with the courtroom open to the public.  (ECF No. 13.)  Counsel Tanya E. Moore appeared on behalf of Plaintiff.  No one appeared on behalf of Defendants.

### B.    Allegations in the Operative Complaint

Plaintiff's verified complaint asserts causes of action for violations of the Americans with Disabilities Act ("ADA"), California's Unruh Civil Rights Act (the "Unruh Act"), and denial of full and equal access to public facilities pursuant to California Health and Safety Code §§ 19953 *et seq.* against Defendants, the purported owner/operator/leaser of the facility All American Glass, 6111 N. Blackstone Avenue, Fresno, California 93710 (the "Facility").  (ECF No. 1, ¶¶ 1, 7, 16-47.)  Plaintiff alleges the Facility, a store specializing in glass for vehicles, is open to the public, intended for non-residential use, affects commerce, and is a "public accommodation" under 42 U.S.C. § 12181(7)(F).  (Id. at ¶ 9; ECF No. 10-1 at p. 3.)[1]

Plaintiff alleges he is substantially limited in his ability to walk and must use a wheelchair for mobility.  (ECF No. 1, ¶ 8.)  Plaintiff contends he lives near the area where the Facility is located.  (Id. at ¶ 10.)  On or about August 12, 2024, Plaintiff alleges he visited the Facility to purchase a new windshield.  (Id.)  During the visits, Plaintiff contends he encountered barriers

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

2

that interfered with and denied his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Facility. (Id.) Specifically, Plaintiff identifies the following barriers:

> a) Plaintiff could not locate a designated accessible parking stall in the Facility's parking lot, and had to park in a standard parking stall that lacked a designated access aisle, which he requires in order to ensure sufficient clear space next to his vehicle to load and unload.
>
> b) The path of travel to the Facility entrance was obstructed by parked vehicles, as the parking stalls lacked wheel stops. Plaintiff had difficulty travelling between the parked vehicles to get to and from the Facility entrance. When Plaintiff came back to pick up his vehicle, he could not get to the door because of the lack of clearances and had to send his wife inside to pick up the keys and paperwork.
>
> c) The transaction counter was too high, which made it difficult for Plaintiff to converse with the staff and handle his transaction. 8.

(Id. at ¶ 10; ECF No. 10-1, pp. 5-6.) Plaintiff asserts the described barriers constitute noncompliance with the 1991 ADA Accessibility Guidelines ("1991 Standards") and/or the 2010 ADA Standards for Accessible Design, in violation of 42 U.S.C. § 12182(a), as well as California Civil Code § 51(f). (ECF No. 1, ¶¶ 16-47; ECF No. 10-1, pp. 4-6.) Plaintiff further alleges Defendants knew or should have known of the barriers, and that Defendants have the financial means to remove them but refuses to do so. (ECF No. 1, ¶ 13.) Plaintiff claims the obviousness of the barriers is sufficient to establish discriminatory intent. (Id. at ¶¶ 14-15.)

As a result of these barriers, Plaintiff contends he is deterred from visiting the Facility because its goods, services, facilities, privileges, advantages, and accommodations were unavailable to him due to his physical disabilities and Plaintiff will return to the Facility once the barriers are removed. (Id. at ¶ 10, 12.) Plaintiff seeks injunctive and declaratory relief, statutory damages, attorneys' fees, and costs. (Id. at pp. 8-9; ECF No. 10-1, pp. 6-9.)

## II.

## LEGAL STANDARD

"[D]efault judgments are ordinarily disfavored" because "[c]ases should be decided upon their merits whenever reasonably possible." NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616

1    (9th Cir. 2016), quoting <u>Eitel v. McCool</u>, 782 F.2d 1470, 1472 (9th Cir. 1986).  Pursuant to

2    Federal Rule of Civil Procedure ("Rule") 55, obtaining a default judgment is a two-step process.

3    Entry of default is appropriate as to any party against whom a judgment for affirmative relief is

4    sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil

5    Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R. Civ. P. 55(a).

6    After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Rule

7    55(b)(2) provides the framework for the Court to enter a default judgment:

> Entering a Default Judgment.
>
> (2) By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

<u>Id.</u>

        The decision to grant a motion for default judgment is within the discretion of the court.

<u>PepsiCo, Inc. v. Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); <u>see also</u> <u>TeleVideo</u>

<u>Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917 (9th Cir. 1987).  The Ninth Circuit has set forth the

following seven factors (the "<u>Eitel</u> factors") that the Court may consider in exercising its

discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's

substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the

action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due

to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure

favoring decisions on the merits.  <u>Eitel</u>, 782 F.2d at 1471-72.

4

1    Generally, once default has been entered, "the factual allegations of the complaint, except

2    those relating to damages, will be taken as true." Garamendi v. Henin, 683 F.3d 1069, 1080 (9th

3    Cir. 2012), quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977); see also Fed.

4    R. Civ. P. 8(b)(6). The amount of damages must be proven at an evidentiary hearing or through

5    other means. Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008).

6    Additionally, "necessary facts not contained in the pleadings, and claims which are legally

7    insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261,

8    1267 (9th Cir. 1992) (internal citation omitted). The relief sought must not be different in kind or

9    exceed the amount that is demanded in the pleadings. Fed. R. Civ. P. 54(c).

10                                             **III.**

11                                        **DISCUSSION**

12    The Court begins by discussing service and then turns to the Eitel factors to determine

13    whether default judgment should be entered.

14    **A.    Service**

15    The Court considers the adequacy of service of process before evaluating the merits of a

16    motion for default judgment. See Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir.

17    1992). "A federal court does not have jurisdiction over a defendant unless the defendant has

18    been served properly under Fed. R. Civ. P. 4." Direct Mail Specialists, Inc. v. Eclat

19    Computerized Techs., Inc. (Direct Mail), 840 F.2d 685, 688 (9th Cir. 1988) (citations omitted).

20    "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient

21    notice of the complaint." Id., quoting United Food & Commercial Workers Union v. Alpha Beta

22    Co., 736 F.2d 1371, 1382 (9th Cir. 1984). However, "without substantial compliance with Rule

23    4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal

24    jurisdiction.'" Id., quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986). "[A] signed

25    return of service constitutes prima facie evidence of valid service which can be overcome only

26    by strong and convincing evidence." SEC v. Internet Solutions for Bus., Inc., 509 F.3d 1161,

27    1163 (9th Cir. 2007).

28    / / /

5

### 1.    All American Glass, Inc.

Here, Defendants All American Glass, Inc. is a business entity, thus Rule 4 subdivision (h) applies.  Under Rule 4(h), a corporation, partnership, or other unincorporated association that is subject to suit under a common name must be served "(A) in the manner prescribed by Rule 4(e)(1) for serving an individual," or "(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]"  Fed. R. Civ. P. 4(h)(1)(A)-(B).  Under Rule 4(e)(1), an individual may be served pursuant to state law.  Fed. R. Civ. P. 4(e)(1).

California law sets forth requirements both as to who may be served, Cal. Code Civ. Proc. §§ 415.10-416.90, and the manner in which service on that person may be effectuated. Cal. Code Civ. Proc. §§ 416.10-415.95.   As relevant here, service may be completed upon various "persons," including corporations. Cal. Code Civ. Proc. § 416.10.  A corporation may be served by delivering a copy of the summons and complaint to: (1) the person designated as agent for service of process; (2) the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager a person authorized by the corporation to receive service of process; or (3) as authorized by provisions of California's Corporations Code §§ 1701, 1702, 2110, 2111, 3301-3303, or 6500-6504 (depending upon the applicable time).  Cal. Code Civ. Proc. §§ 416.10(a)-(b), (d).

As to the manner in which service may be completed, California law permits either personal service or substituted service.  Cal. Code Civ. Proc. §§ 415.10, 415.20.  Under Cal. Code Civ. Proc. § 415.20, substitute service on regular corporations, dissolved/charter-forfeited corporations, or joint stock companies/associations may be completed as follows:

> a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy

1

2

3

> of the summons and complaint were left.  When service is effected by leaving a copy of the summons and complaint at a mailing address, it shall be left with a person at least 18 years of age, who shall be informed of the contents thereof.  Service of a summons in this manner is deemed complete on the 10th day after the mailing.

4

Cal. Civ. Proc. Code § 415.20(a)

5

6

7

8

9

10

11

12

Here, the business search page of the California Secretary of State website provides that All American Glass is a corporation in good standing, with its principal place of business address at 7458 N. Lodi, Fresno, California 93722 and its mailing address at 6111 N. Blackstone Avenue, Fresno, California 93710.[2]  Business search for California-Fresno Investment Company, Cal. Secretary of State, https://bizfileonline.sos.ca.gov/search/business (last visited July 30, 2025).  The Secretary of State website further indicates the agent for service of process is Vincent Nicholas Ceppaglia, located at the mailing address at 6111 N. Blackstone Avenue, Fresno, California 93710.  Id.

13

14

15

16

17

Plaintiff's proof of service proffers that Plaintiff served Vincent Nicholas Ceppaglia on March 18, 2025, at 5:30 p.m., by personal service.  (ECF No. 5, p. 2.)  Because Plaintiff served the person designated as agent for service of process for All American Glass, Inc., the Court finds that Plaintiff has complied with Cal. Code of Civ. Proc. § 416.10(a), which in turn is in compliance with service under Rule 4(e)(1).  Service was proper.

18

### 2.    Laura M. Williams

19

20

21

22

23

Plaintiff proffers he served a copy of the summons and complaint on Laura M. Williams—Trustee of the Donald A. Williams Exemption Trust established under the Williams Family Revocable Trust dated May 7, 2001—on April 11, 2024, by personal service on Williams at 2126 W. Minarets Avenue, Fresno, California 93711.  (ECF No. 4.)  The service affidavit indicates that the person served identified as Laura. M. Williams.  (Id.)

24

Under Federal Rule of Civil Procedure 4(e)(2)(A), service may be completed by

25

26

27

28

---

[2] Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts may also take judicial notice of information displayed on government websites where neither party disputes the accuracy of the information contained therein, including the California Secretary of State's website.  See Daniels-Hall v. Nat'l. Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010); Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015).

1  "delivering a copy of the summons and of the complaint to the individual personally." Here,

2  service affidavit indicates that Williams was served personally at her personal address. (Id.)

3  Therefore, the Court finds that service was properly effectuated on Williams.

**B.    Evaluation of the Eitel Factors in Favor of Default Judgment**

5  The Court finds that consideration of the Eitel factors weighs in favor of granting default

6  judgment in favor of Plaintiff.

1.  Possibility of Prejudice Toward Plaintiff

8  Generally, where default has been entered against a defendant, a plaintiff has no other

9  means by which to recover against that defendant. PepsiCo, Inc., 238 F. Supp. 2d at 1177;

10  Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012).

11  Here, the Court finds Plaintiff would be prejudiced if default judgment were not granted because

12  Plaintiff does not have any other way to recover against Defendants. See Vogel v. Rite Aid

13  Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014). This factor weighs in favor of default

14  judgment against Defendants.

2.  Merits of Plaintiff's Claims and Sufficiency of the Complaint

16  The second and third Eitel factors, taken together, "require that a plaintiff state a claim on

17  which the [plaintiff] may recover." PepsiCo, Inc., 238 F. Supp. 2d at 1175 (brackets in original).

18  The complaint asserts claims under the ADA, the Unruh Act, and Health and Safety Code.

19  Plaintiff's motion, however, only requests default judgment with respect to the ADA and the

20  Unruh Act claims.

**a.  Americans with Disabilities Act**

22  Title III of the ADA provides that "[n]o individual shall be discriminated against on the

23  basis of disability" in places of public accommodation. 42 U.S.C. § 12182(a). "Discrimination"

24  is defined as a failure to make reasonable modifications in policies, practices, or procedures,

25  when modification is necessary to afford such goods, services, facilities, privileges, advantages,

26  or accommodations to individuals with disabilities, unless modifications would fundamentally

27  alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."

28  Id. at § 12182(b)(2)(A)(ii).

8

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability."  Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).  Facilities include "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located."  28 C.F.R. § 36.104.  Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that:  (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable."  Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006), quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000); see also Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 590 (9th Cir. 2003).

i.   Whether Plaintiff is Disabled Within the Meaning of the ADA

Plaintiff must first allege he is disabled under the ADA.  Molski, 481 F.3d at 730.  The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  Major life activities include walking, standing, and hearing.  42 U.S.C. § 12102(2)(A).  An individual who is substantially limited in his ability to walk is disabled under the ADA.  42 U.S.C. § 12102.

Plaintiff alleges that he is substantially limited in his ability to walk and must use a wheelchair for mobility.  (ECF No. 1, ¶ 8.)  Therefore, Plaintiff has adequately pleaded this element of his ADA discrimination claim.

ii.   Whether Defendants Owns, Leases, or Operates a Place of Public Accommodation

Plaintiff must allege Defendants "owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a); Molski, 481 F.3d at 730.  The ADA expressly provides that sales establishments are considered a public accommodation.  42 U.S.C. § 12181(7)(E).  Plaintiff proffers the Facility—which Plaintiff alleges he visited to purchase windshield glass—is

9

1    a sales establishment open to the public, intended for non-residential use, its operation affects

2    commerce, and is a place of public accommodation under the ADA.  (ECF No. 1, ¶¶ 9-10; ECF

3    No. 10-1, p. 3.)

4        Plaintiff's complaint generally alleges that "Defendants own, operate, and/or lease the

5    Facility, and consist of a person (or persons), firm, and/or corporation."  (ECF No. 1, ¶ 7; see also

6    ECF No. 10-1 p. 3.)  Plaintiff's counsel's declaration attached to the instant motion provides

7    additional support for Plaintiff's contention.  (ECF No. 10-2.)  Counsel attaches a printout of a

8    search result for "N 50 FT of Lot 6 Tract No. 1051 Finch Tract," APN 407-144-07 from the

9    "Parcel Quest public records database," which counsel proffers reflects that Defendants owns the

10   real property on which the Facility is located.  (ECF No. 10-3.)  In addition, counsel provides a

11   trust transfer grant deed from the Fresno County Recorder, indicating that Defendant Williams

12   owns APN 407-177-07.  (Id.)  Counsel also provides a LexisNexis assessment record, indicating

13   that Defendant Williams, via the Trust, owns APN 407-144-07, which is also known as 6111 N.

14   Blackstone Avenue, Fresno, California, 93711.  (Id.)

15       In consideration of counsel's declaration and the supporting property records, the Court

16   finds Plaintiff has sufficiently alleged that the Defendants owns or operates the Facility.

17           iii.  <u>Plaintiff Was Denied Public Accommodations Due to an Architectural Barrier</u>

18           (1) Whether Denial of Access Was Due to Disability

19       Plaintiff must allege and prove that he was denied public accommodations by a defendant

20   because of his disability.  <u>Molski</u>, 481 F.3d at 730.  Here, Plaintiff alleges it was difficult for him

21   to locate the designated accessible parking in the Facility's lot because Plaintiff could not locate a

22   designated accessible parking stall in the parking lot and had to park in a standard parking stall

23   that lacked a designated access aisle.  (ECF No. 1, ¶ 10.)  Further, Plaintiff alleges that the path of

24   travel to the Facility's entrance was obstructed by parked vehicles because the parking stalls

25   lacked wheel stops.  (Id.)  Plaintiff also alleges that the transaction counter was too high, making

26   it difficult for Plaintiff to converse with staff and handle his transaction.  (Id.)  Thus, the Court

27   finds that Plaintiff has adequately established he was denied access to the Facility due to his

28   disability.

1    (2) Architectural Barrier

2    Congress entrusted the Attorney General with promulgating the implementing regulations

3    for Title III.  Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004), citing 42

4    U.S.C. § 12186(b).  Congress provided that these implementing regulations must be consistent

5    with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance

6    Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities

7    ("ADAAG") in 1991.  Id., citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A.  The

8    Attorney General adopted the ADAAG as the "Standards for Accessible Design," which lay out

9    the technical structural requirements of places of public accommodation and are applicable during

10   the design, construction, and alteration of such facilities.  Id. (citing 28 C.F.R. Pt. 36, App. A).

11   "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility

12   Guidelines."  Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011).

13   Plaintiff proffers that because no discovery has occurred, he does not know if the Facility

14   was constructed or had any alteration done after March 15, 2012, and therefore will apply the

15   1991 ADAAG standards to determine whether a barrier existed at the time of his visit to the

16   Facility.  (ECF No. 10-1, pp. 4-5; see also ECF No. 1, ¶ 14.)  However, Plaintiff submits—and

17   the Court agrees—that the 2010 Standards now in effect will govern any injunction which issues,

18   since the remedial work will be undertaken after March 15, 2012.  (ECF No. 10-1, pp. 4-5.)

19   As noted herein, Plaintiff alleges he could not easily find the accessible parking stall, the

20   path to the entrance of the Facility was blocked, and the transaction counter was too high.  (ECF

21   No. 1, ¶ 10.)  Plaintiff maintains these barriers violate 1991 ADAAG §§ 4.6, 4.3.3, 7.2.  (ECF No.

22   10-1, pp. 5-6.)

23   The Court notes that even on default judgment in ADA cases, plaintiffs often present the

24   results of an investigation by an independent consultant, such as a construction expert that takes

25   measurements, or at least a more detailed declaration of the plaintiff in support of the claim that

26   there is an architectural barrier.  Such details do not appear in the instant motion.  Nonetheless,

27   taking the allegations as true for purposes of default judgment as presented by Plaintiff in his

28   verified complaint, and based on the applicable laws and regulations, the Court finds Plaintiff has

11

1    sufficiently alleged and demonstrated the presence of architectural barriers at the Facility which

2    violate the ADA.

3           (3) Whether Removal of the Barrier Is Readily Achievable

4           Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable

5    and able to be carried out without much difficulty or expense."  42 U.S.C § 12181(9).  Factors to

6    be considered in determining whether such removal is readily achievable include:

> (A) the nature and cost of the action needed under this chapter; (B)
> the overall financial resources of the facility or facilities involved in
> the action; the number of persons employed at such facility; the
> effect on expenses and resources, or the impact otherwise of such
> action upon the operation of the facility; (C) the overall financial
> resources of the covered entity; the overall size of the business of a
> covered entity with respect to the number of its employees; the
> number, type, and location of its facilities; and (D) the type of
> operation or operations of the covered entity, including the
> composition, structure, and functions of the workforce of such
> entity; the geographic separateness, administrative or fiscal
> relationship of the facility or facilities in question to the covered
> entity.

14    Id.  Federal regulations provide examples of readily achievable steps to remove barriers,

15    including, but not limited to, installing ramps, making curb cuts in sidewalks and entrances,

16    widening doors, eliminating a turnstile or providing an alternative accessible path, and creating

17    designated accessible parking spaces.  28 C.F.R. § 36.304(b).

18           "All the plaintiff must do at the pleadings stage to proceed under § 12182(b)(2)(A)(iv) is

19    plausibly allege that the barrier's removal is readily achievable."  Whitaker v. Sheikh, No. 21-cv-

20    0493-KJM-KJN, 2022 WL 1262023, at *7 (E.D. Cal. Apr. 28, 2022).  If the defendant fails to

21    plead an applicable affirmative defense, "the plaintiff is effectively entitled to judgment on the

22    pleadings as to that claim—assuming he pleads the preceding elements of a qualifying disability,

23    a covered public accommodation, and an architectural barrier encountered."  Id.; cf. Lopez v.

24    Catalina Channel Express, Inc., 974 F.3d 1030, 1038 (9th Cir. 2020).

25           Here, Plaintiff alleges that Defendants "can easily remove the architectural barriers at the

26    Facility without much difficulty or expense, that the cost of removing the architectural barriers

27    does not exceed the benefits under the particular circumstances, and that Defendants violated the

28    ADA by failing to remove those barriers, when it was readily achievable to do so."  (ECF No. 1,

12

¶ 21.)  In the motion, Plaintiff argues that Defendants can easily remove the barriers without much difficulty or expense because creating designated accessible parking spaces is an identified "exampl[e] of readily achievable steps to remove barriers;" installation of wheel stops and/or painting pavement markings indicating "no parking" may be done without difficulty or expense; and lowering at least a portion of the sales counter can be achieved without difficulty or expense. (ECF No. 10-1, pp. 5-6.)

For purposes of default judgment, the Court finds Plaintiff has plausibly alleged that removal of the architectural barriers he encountered is readily achievable.  Federal regulations provide a non-exclusive list of steps to remove barriers, including "[c]reating designated accessible parking spaces" and "[r]epositioning shelves" 28 C.F.R. §§ 36.304(b)(3), (18).  Courts have also observed that such listed items are "examples of readily achievable steps to remove barriers" and found similar allegations to those alleged here sufficient at the default judgment stage.  Johnson v. Garlic Farm Truck Ctr. LLC, No. 20-cv-03871-BLF, 2021 WL 2457154, at *5-*6 (N.D. Cal. Jun. 16, 2021).  Defendants have not appeared in nor defended this action and thus has offered no affirmative defense that the barriers' removal is not readily achievable.

In sum, Plaintiff has plausibly alleged a prima facie claim for discrimination under Title III against the Defendants, owners of the Facility.  Plaintiff would thereby be entitled to injunctive relief for the violations of the ADA as asserted against Defendants.

### b.    California's Unruh Act

Plaintiff also brings a state law claim for violations of the Unruh Act.  Pursuant to the Unruh Act, all persons are "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal Civ. Code § 51(b).  Additionally, no business establishment of any kind whatsoever shall discriminate against any person in this state on account of disability.  Cal. Civ. Code § 51.5.  Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum of at least $4,000.00 per violation.  Cal. Civ. Code § 52(a); Molski, 481 F.3d at 731; Vogel, 992 F. Supp. 2d at 1011.  After passage of the ADA in 1990, the Unruh Act was amended to provide that a violation of the ADA constitutes a violation of the

13

1    Unruh Act.  Cal. Civ. Code § 54.1(d).  Thus, the Unruh Act incorporates an individual's rights

2    under the ADA by reference, such that a violation of the ADA also constitutes a violation of the

3    Unruh Civil Rights Act.  Cal. Civ. Code § 51(f).

4            Here, Plaintiff alleges Defendants denied him full and equal accommodations, advantages,

5    facilities, privileges, and services in a business establishment based on his disability.  (ECF No. 1,

6    ¶¶ 35-42.)  Because the complaint properly alleges a prima facie claim under the ADA against the

7    Defendants owners of the Facility, the Court finds Plaintiff has also properly alleged facts

8    establishing the necessary elements for an Unruh Act claim.

9            Accordingly, the Court finds that the second and third Eitel factors weigh in favor of

10   default judgment as asserted against Defendant.

11           3.    The Sum of Money at Stake in the Action

12           The sum of money at stake in this action weighs in favor of granting default judgment.

13   PepsiCo, Inc., 238 F Supp. 2d at 1176; see also Philip Morris USA, Inc. v. Castworld Prods., Inc.,

14   219 F.R.D. 494, 500 (C.D. Cal. 2003).  Default judgment is disfavored where large amounts of

15   money are involved, or the award would be unreasonable in light of the defendant's actions.  G &

16   G Closed Cir. Events, LLC v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D.

17   Cal. May 30, 2012); PepsiCo, Inc., 238 F. Supp. 2d at 1176.  Here, in addition to injunctive relief,

18   Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees and paralegals'

19   fees in the amount of $2,065.00, and costs of $1,007.85, for a total award of $3,072.85.  (ECF No

20   10-1, pp. 8-9.)  This is not an excessive amount of money, nor does it seem unreasonable in light

21   of the allegations contained in the complaint.  See Vogel, 992 F. Supp. 2d at 1012 (citing Moore

22   v. Cisneros, No. 1:12-cv-00188 LJO SKO, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012));

23   Johnson v. Huynh, No. CIV S-08-1189 JAM DAD, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27,

24   2009).  Accordingly, this factor does not weigh against default judgment.

25           4.    The Possibility of a Dispute Concerning Material Facts

26           The next Eitel factor considers the possibility of a dispute concerning material facts.  As

27   discussed above, Plaintiff has sufficiently alleged disability discrimination under the ADA and

28   the Unruh Act by demonstrating his encountering of architectural barriers at the Facility.  The

Court finds this factor weighs in favor of entering default judgment because there is no possibility of dispute regarding the material facts due to the factual allegations in the complaint being taken as true upon Defendants' default.  See Garamendi, 683 F.3d at 1080; PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Accordingly, the Court finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff against Defendant.

### 5.  Whether Default Was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that a defendant's default resulted from excusable neglect.  PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect.  Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

The Court finds this factor weighs in favor of granting default judgment because Defendants has failed to file a responsive pleading or otherwise appear in this action, despite being properly served.  See id.

### 6.  Policy Favoring a Decision on the Merits

Generally, default judgments are disfavored, and a case should be decided on the merits whenever possible.  See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985).  However, the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, Defendants' failure to appear has made a decision on the merits impossible at this juncture.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Given the prejudice to Plaintiff if default judgment is not granted, and the merits of the allegations contained in the complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits.  See PepsiCo Inc., 238 F. Supp. 2d at 1177.  Accordingly, the Court finds the policy favoring decisions on the merit does not weigh against entering default judgment against Defendants under these circumstances.

In sum, the Court finds that the Eitel factors weigh in favor of granting default judgment and will recommend that Plaintiff's motion for default judgment be granted.  The Court now turns

15

1    to the types of relief requested by Plaintiff.

2           **C.    Requested Relief**

3           In addition to injunctive relief, Plaintiff seeks statutory damages in the amount of

4    $4,000.00, attorneys' fees and paralegals' fees in the amount of $2,065.00, and costs of

5    $1,007.85, for a total award of $3,072.85.  (ECF No. 10-1, p. 9.)   While the Court will

6    recommend granting Plaintiff's injunction in full, the award of attorneys' fees should be reduced

7    for the reasons discussed below.

8           1.    Injunctive Relief

9           Plaintiff seeks an injunction compelling Defendants to comply with the ADA by removing

10   the itemized barriers that Plaintiff personally encountered.  (ECF No. 1, p. 8; ECF No. 10-1,

11   pp. 8-9.)  The ADA provides that "injunctive relief shall include an order to alter facilities to

12   make such facilities readily accessible to and usable by individuals with disabilities to the extent

13   required" by the ADA.   42 U.S.C. § 12188(a)(2).   A court may grant injunctive relief for

14   violations of the Unruh Act under § 52.1(h).  Vogel, 992 F. Supp. 2d at 1015; Cal. Civ. Code §

15   52.1.  "Injunctive relief may be granted 'when architectural barriers at defendant's establishment

16   violate the ADA.'"  Johnson v. Pizano, No. 2:17-cv-1655-TLN-DB, 2019 WL 2499188, at *6

17   (E.D. Cal. June 17, 2019), quoting Vogel, 992 F.Supp.2d at 1015.

18          Pursuant to federal and California law, Plaintiff is entitled to the removal of those

19   architectural barriers which he encountered on his visit to the Facility that violated the ADA.

20   Therefore, an injunction should issue requiring Defendants to remove barriers that are in violation

21   of the ADA and the ADAAG.

22          2.    Statutory Damages

23          Plaintiff seeks statutory damages in the amount of $4,000.00 as authorized by the

24   California Unruh Civil Rights Act.  The Unruh Act provides for minimum statutory damages of

25   $4,000.00 for each violation.  Cal. Civ. Code § 52(a).  Under the Unruh Act, statutory damages

26   may be recovered if a violation of one or more construction-related accessibility standards denied

27   the plaintiff full and equal access to the place of public accommodation on a particular occasion.

28   Cal. Civ. Code § 55.56(a).  A plaintiff is denied full and equal access only when they personally

encountered the violation on a specific occasion. Cal. Civ. Code § 55.56(b). A litigant need not prove any actual damages to recover statutory damages of $4,000.00. Molski, 481 F.3d at 731.

Because Plaintiff sufficiently alleged violation of the ADA which established a violation of the Unruh Act, the Court finds that Plaintiff is entitled to statutory damages in the amount of $4,000.00.

3. Attorney's Fees and Costs

Plaintiff seeks attorneys' fees and paralegals' fees in the amount of $2,065.00, and costs of $1,007.85, for a total award $3,072.85 in fees and costs. (ECF No. 10-1, p. 9.) Pursuant to 42 U.S.C. § 12205, the party that prevails on a claim brought under the ADA may recover "a reasonable attorney's fee, including litigation expenses," at the discretion of the Court. "[U]nder federal fee shifting statutes the lodestar approach is the guiding light in determining a reasonable fee." Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010) (cleaned up). The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts. First a court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary. Second, a court may adjust the lodestar upward or downward using a multiplier based on factors not subsumed in the initial calculation of the lodestar. The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high.

Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041,1045 (9th Cir. 2000) (cleaned up).

Under the lodestar method, a district court will first determine the appropriate hourly rate for the work performed, and that amount is then multiplied by the number of hours properly expended in performing the work. Antoninetti, 643 F.3d at 1176. The Court has the discretion to make adjustments to the number of hours claimed or to the lodestar but is required to provide a clear but concise reason for the fee award. Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir.

1992).  The lodestar amount is to be determined based upon the prevailing market rate in the relevant community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).

### a. Reasonable hourly rate

Counsel Tanya Moore ("Moore") has been in practice for over twenty years, with over ten years spent almost exclusively in disability access litigation, and her current billing rate is $650.00.  (ECF No. 10-2, ¶¶ 4, 6.)  However, Moore is only seeking an hourly rate of $300.00 for her work on this matter. (Id. at ¶ 6.)  Moore is also seeking an hourly rate of $115.00 for the work of Senior Paralegal Whitney Law ("Law"), despite normally billing at a higher rate in the Northern District of California, where the firm is located.  (Id. at ¶ 9.)

The lodestar amount is to be determined based upon the prevailing market rate in the relevant community, which in this matter is the Fresno Division of the Eastern District of California.  "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11.

This Court has previously found $300.00 per hour to be a reasonable rate for Moore.  See, e.g., Gilbert v. HBA Enterprises, Inc., No. 1:21-cv-01358-JLT-SAB, 2022 WL 2663761, at *17 (E.D. Cal. July 11, 2022).  Further, in the context of cases alleging violations of the ADA, courts in this district have awarded fees ranging from $250.00 to $325.00 per hour within recent years. See, e.g., Cervantes v. Vargas, No. 1:17-cv-00923-LJO-SKO, 2018 WL 2455615, at *7 (E.D. Cal. June 1, 2018) (awarding $275.00 per hour to attorney with nine years of experience and representation in 275 ADA actions); Block v. Christian, No. 1:16-cv-00650LJO-SKO, 2017 WL 5248402, at *4 (E.D. Cal. Nov. 13, 2017) (finding $325.00 per hour to be a reasonable hourly rate for an attorney with twenty-four years of experience in general litigation and twelve years working on ADA cases).  Therefore, the Court will recommend that Plaintiff receive the requested $300.00 per hour for the services of Moore.

The Court also recommends that Plaintiff receive the requested $115.00 per hour for the services of the Law.  The Court has previously found this rate to be reasonable.  See, e.g., Gilbert,

2022 WL 2663761, at *17; see also Durham v. FCA US LLC, No. 2:17-cv-00596-JLT, 2020 WL

243115, at *9 (E.D. Cal. Jan. 16, 2020) ("Generally, paralegal rates within the Fresno Division of

the Eastern District range between $75 to approximately $150.00.").

### b. Reasonable number of hours

Moore billed 4.2 hours in this action.  (See ECF No. 10-2, ¶ 11.)  Law billed a total of 7.0

hours.  (Id. at ¶ 11.)  The Court has previously observed that "[b]ased upon the Court's familiarity

with the actions filed by Ms. Moore's firm in this court, the Court is aware that [Moore uses a]

form complaint [that] is substantially similar to dozens of other actions filed in this district," and

previously found "time billed [to be] excessive and duplicative."  Lakhani, 2017 WL 1831942, at

*7.  However, the Court notes that in this case it appears counsel has taken the Court's previous

orders into consideration, and the Court finds many of the billable hours are generally within

reasonable ranges.

Turning to the specific time entries the Court takes issues with, on February 25, 2025,

Law spent 0.5 hours reviewing the case initiation documents, put notes in a file, reviewed

standing orders, and evaluate whether a consent/decline form was required.  (ECF No. 10-3, p. 3.)

On April 9, 2025, Law spent 0.8 hours reviewing the status of the answer's past due and

preparing a request for clerk's entry of default.  (Id.)  On April 10, 2025, Law spent 0.2 hours

finalizing and filing the request for entry of default.  (Id.)  Later that same day, Law spent 0.2

hours reviewing the Clerk's entry of defaults and made notes.  (Id.)  On May 7, 2025, Law spent

0.1 hours reviewing the Court's order setting deadlines.  (Id. at p. 4.)  The Court finds these

entries to be generally clerical work and recommends reducing them to 0 hours.  See Missouri v.

Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not

be billed at a paralegal rate, regardless of who performs them."); see also Block v. Narwal, No.

1:22-cv-00597-ADA-EPG, 2022 WL 17455502, at *11 (E.D. Cal. Dec. 6, 2022) (awarding no fee

for paralegal's boilerplate entry that he spent ".3 hours 'Review[ing] order setting scheduling

conference to calendar hearing date, set deadline to complete Rule 26 call, and deadline to file

joint scheduling report'" due to its clerical nature).

The Court finds that a reduction of 1.8 hours is appropriate for Law.  The Court finds the

1  remaining hours for Law and Moore are reasonable. The Court will add 0.1 hours for the time

2  Moore expended attending the hearing via videoconference, which lasted less than five minutes.

3      **c.  Total Reasonable Attorney's Fee Award**

4      The Court finds that counsel Tanya Moore reasonably expended 4.3 hours in this action at

5  a reasonable rate of $300.00 per hour, for a total of $1,290.00, and senior paralegal Whitney Law

6  reasonably expended 5.2 hours at a reasonable rate of $115.00 per hour, for a total of $598.00.

7  Therefore, the Court will recommend that Plaintiff be awarded attorneys' fees in the amount of

8  $1,888.00.

9      **d.  Costs**

10     The ADA authorizes the award of costs for an action. 42 U.S.C. § 12205; <u>see</u> 28 U.S.C.

11 § 1920. Plaintiff seeks costs of $405.00 for filing fees; $216.82 for service expense; $220.50 for

12 a consultant that completed investigation prior to filing of the complaint; and $165.53 in a

13 LexisNexis invoice. (ECF No. 10-2, ¶¶ 13-16; ECF No. 10-3, pp 6-13.) The Court finds such

14 costs, $1,007.85, have been reasonably expended in association with this litigation.

15 **IV.**

16 **CONCLUSION AND RECOMMENDATIONS**

17     The <u>Eitel</u> factors weigh in favor of granting default judgment, and the entry of default

18 judgment is within the discretion of the Court. <u>See</u> <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th

19 Cir. 1980).

20     Based upon the foregoing, the Court HEREBY RECOMMENDS that:

21     1.    Plaintiff's motion for default judgment (ECF No. 10) be GRANTED;

22     2.    Plaintiff be AWARDED statutory damages in the amount of $4,000.00;

23     3.    Plaintiff be AWARDED reduced attorneys' fees in the amount of $1,888.00;

24     4.    Plaintiff be AWARDED costs in the amount of $1,007.85; and

25     5.    Plaintiff be GRANTED an injunction requiring Defendant, within six (6) months

26         of entry of the order, to provide disability access by making the following

27         modifications to the property known as All American Glass, Inc., located at 6111

28         N. Blackstone Avenue, Fresno, California 93710 (the "Facility"), such that each

1    item is brought into compliance with the accessibility requirements of the

2    Americans with Disabilities Act and California Code of Regulations, Title 24, by:

3          i.  Providing a properly configured and identified accessible parking stall

4            with adjacent access aisle;

5         ii.  Properly securing or maintaining accessible routes to the Facility

6            entrance; and

7        iii.  Providing and maintaining accessible an accessible sales and service

8            counter.

9          These findings and recommendations are submitted to the district judge assigned to this

10   action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen**

11   **(14) days** of service of this recommendation, any party may file written objections to these

12   findings and recommendations with the Court and serve a copy on all parties.  Such a document

13   should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

14   district judge will review the magistrate judge's findings and recommendations pursuant to 28

15   U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

16   time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th

17   Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

18         Furthermore, Plaintiff is HEREBY ORDERED to serve a copy of these findings and

19   recommendations on Defendants within three (3) days of entry.

20

21   IT IS SO ORDERED.

22   Dated:   **July 30, 2025**    _____

23                     STANLEY A. BOONE
                       United States Magistrate Judge

24

25

26

27

28