**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE ACOSTA,<br><br>        Plaintiff,<br><br>    v.<br><br>ALL AMERICAN GLASS, INC., et al.,<br><br>        Defendants. | Case No. 1:25-cv-00240 JLT SAB<br><br>ORDER ADOPTING IN PART THE FINDINGS AND RECOMMENDATIONS, GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, DISMISSING PLAINTIFF'S STATE LAW CLAIMS WITHOUT PREJUDICE, AND DIRECTING THE CLERK OF COURT TO CLOSE THE CASE<br><br>(Docs. 10, 14) |

       Jose Acosta seeks default judgment against the defendants—All American Glass, Inc. and Laura M. Williams, Trustee of the Donald A. Williams Exemption Trust—for violating the Americans with Disabilities Act and California's Unruh Civil Rights Act.[1] (Doc. 10.) For the reasons set forth below, the motion for default judgment is granted in part. The Court finds default judgment is appropriate for the claim arising under the ADA but declines to exercise supplemental jurisdiction and dismisses the claims arising under state law without prejudice.

**I.    Relevant Background**

       Plaintiff reports he "is substantially limited in his ability to walk, and must use a wheelchair for mobility." (Doc. 1 at 2, ¶ 8.) He asserts he visited All American Glass "to

---

[1] Plaintiff's complaint includes a claim for denial of full and equal access to public facilities under California Health & Safety Code §§ 19955, 19959. (Doc. 1 at 8.) However, he does not seek default judgment on this claim.

1

purchase a new windshield" on August 12, 2024. (*Id.*, ¶ 10.) Plaintiff alleges he "personally encountered barriers (both physical and intangible)" at All American Glass that interfered with his ability to use and enjoy the goods and services. (*Id.* at 2-3, ¶ 10.) Specifically, Plaintiff identified the following architectural barriers:

> a) Plaintiff could not locate a designated accessible parking stall in the Facility's parking lot, and had to park in a standard parking stall that lacked a designated access aisle, which he requires in order to ensure sufficient clear space next to his vehicle to load and unload.
>
> b) The path of travel to the Facility entrance was obstructed by parked vehicles, as the parking stalls lacked wheel stops. Plaintiff had difficulty travelling between the parked vehicles to get to and from the Facility entrance. When Plaintiff came back to pick up his vehicle, he could not get to the door because of the lack of clearances and had to send his wife inside to pick up the keys and paperwork.
>
> c) The aisles inside the Facility were too narrow for Plaintiff's wheelchair to fit through, so he could not navigate around the store. Plaintiff had to ask the cashier to get a soda for him because he could not fit down the aisle to reach it.
>
> c) The transaction counter was too high, which made it difficult for Plaintiff to converse with the staff and handle his transaction.

(*Id.* at 3, ¶ 10.)

Plaintiff reports that he "lives less than fifteen miles" from All American Glass, and he "was, and continues to be, deterred from visiting" the location because he knows the "goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to [him] due to [his] physical disabilities." (*Id.* at 2-3, ¶¶ 10, 12.) Plaintiff asserts that he will return to All American Glass "once the barriers are removed" because he "enjoys the goods and services offered." (*Id.* at 3, ¶ 12.)

On February 24, 2025, Plaintiff initiated this action by filing a complaint against the defendants alleging: (1) violations of Title III of the Americans with Disabilities Act, (2) violation of California's Unruh Act, and (3) denial of full and equal access to public facilities under California's Health and Safety Code. (Doc. 1 at 4-8.) Plaintiff asserts that the defendants "possessed and enjoyed sufficient control and authority" to remove the barriers and ensure All American Glass complied with the 1991 ADA Accessibility Guidelines and/or the 2010 ADA

Standards for Accessible Design. (*Id.* at 4, ¶ 14.) In addition, Plaintiff contends the defendants have "the financial resources to remove the[] barriers … without much difficulty or expense[], and make the Facility accessible to the physically disabled." (*Id.*, ¶ 13.)

Plaintiff served the defendants with the summons and complaint. (Docs. 4, 5.) After the defendants failed to respond to the complaint, Plaintiff requested the Court enter default. (Doc. 6.) The Clerk of Court entered default on April 10, 2025. (Docs. 7, 8.) Plaintiff now seeks default judgment, including injunctive and declaratory relief; statutory damages under the Unruh Act; attorneys' fees; and costs. (Doc. 10.)

**II.      Findings and Recommendations**

The magistrate judge evaluated the factors set forth by the Ninth Circuit in *Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir. 1986), and found the factors weighed in favor of granting the motion for default judgment. (Doc. 14.) Specifically, the magistrate judge found default judgment was appropriate for Plaintiff's claim arising under the ADA, and recommended the requested injunctive relief be granted. (*Id.* at 8-16.) The magistrate judge also found default judgment was appropriate for the claim arising under the Unruh Act, and recommended awarding statutory damages in the amount of $4,000.00. (*Id.* at 13-14, 16-17.) Finally, the magistrate judge recommended Plaintiff be awarded attorneys' fees in the modified amount of $1,888.00 and litigation expenses and costs in the amount of $1,007.85, for a total of $2,895.85. (*Id.* at 17-20.)

The Findings and Recommendations were served on Plaintiff, who served the defendants on July 31, 2025. (Doc. 15.) The Court informed the parties that any objections must be filed within 14 days of the date of service. (Doc. 14 at 21.) In addition, the Court advised the parties that the "failure to file objections within the specified time may result in the waiver of rights on appeal." (*Id.*, citing *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).) No objections were filed, and the time to do so expired.

**III.     Supplemental Jurisdiction**

Before finding monetary damages were appropriate for the identified state law claims, the magistrate judge did not make any findings as to whether the Court should exercise supplemental jurisdiction over Plaintiff's state law claims, or whether exceptional circumstances exist to decline

3

such jurisdiction. A court that has original jurisdiction over a civil action—such as a one raising a claim under the ADA—"shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). State claims are part of the same case or controversy as federal claims "when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1-A Agric. Assoc.*, 387 F.3d 850, 855-56 (9th Cir. 2004) (internal quotation marks, citation omitted). Notably, the Ninth Circuit concluded ADA and Unruh Act claims that derive from a common nucleus of facts "form part of the 'same case or controversy' for purposes of § 1367(a)." *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021).

Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right" and district courts "can decline to exercise jurisdiction over pendent claims for a number of valid reasons." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997) (internal quotation marks, citations omitted). A district court may "decline supplemental jurisdiction over a claim" if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). This provision is "a codification of the principles of economy, convenience, fairness, and comity that underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction." *Whitaker v. Mac*, 411 F.Supp.3d 1108, 1113 (C.D. Cal. 2019) (citing *Int'l Coll. of Surgeons*, 522 U.S. at 172-73; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (identifying the following as relevant factors: judicial economy, convenience, fairness, and comity, which together are the "*Gibbs* values").

The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under the first three provisions." *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998). However, the Court is required to identify why circumstances may be "exceptional" when declining jurisdiction

1  under Section 1367(c)(4). *Arroyo v. Rosas*, 19 F.4th 1202, 1210 (9th Cir. 2021). "A district
2  court's decision to decline supplemental jurisdiction over a state-law claim is reviewed for abuse
3  of discretion." *Vo v. Choi*, 49 F.4th 1167, 1171-72 (9th Cir. 2022).

### A.     Jurisdiction under Section 1367(c)(4)

A court's inquiry as to whether decline jurisdiction under Section 1367(c)(4) involves a two-part inquiry. *Arroyo*, 19 F.4th at 1210. First, the Court must identify "why the circumstances of the case are exceptional within the meaning of § 1367(c)(4)." *Id.* (citation omitted); *see also San Pedro Hotel*, 159 F.3d at 478-79. Second, to evaluate if "there are 'compelling reasons for declining jurisdiction' in a given case, the court should consider what 'best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine' articulated in *Gibbs*." *Arroyo*, 19 F.4th at 1210 (*citing Int'l Coll. of Surgeons*, 522 U.S. at 172-73). These "inquiries are not particularly burdensome." *Id.* (citation omitted.)

#### 1.     Exceptional circumstances

Significantly, "California adopted heightened pleading requirements for Unruh Act accessibility claims in an attempt to deter baseless claims and vexatious litigation" in 2012. *Machowski v. Auburndale Props*., 574 F.Supp.3d 776, 779 (C.D. Cal. 2021); *see also Vo*, 49 F.4th at 1170 (noting the state "imposed heightened pleading requirements" following the abuse of remedies under the Unruh Act). The state adopted further restrictions in 2015, after the heightened pleading requirements alone "did not substantially reduce vexatious filings." *Id.* (citing Cal. Civ. Proc. Code § 425.50). The state targeted "high-frequency litigants," which were defined as plaintiffs who "filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation." Cal. Code Civ. Proc. § 425.55(b)(1).

Under California law, high-frequency litigants are now required to comply with the following requirements:

> (1) the complaint must allege whether it is filed by or on behalf of a high-frequency litigator; (2) the number of complaints alleging a construction related accessibility claim that were filed by the high frequency litigator in the past twelve months; (3) the reason the high frequency litigator was in the region of the defendant's business; and

        (4) the specific reason that the high frequency litigator desired access to the defendant's business.

*Machowski*, 574 F.Supp.3d at 779 (citation omitted, modifications adopted); *see also* Cal. Civ. Proc. Code § 425.50(a)(4)(A)). The high-frequency litigants must also pay an additional $1,000 filing fee. Cal. Gov't. Code § 70616.5(a), (b). These additional requirements apply only in the state court, and "plaintiffs can circumvent the restrictions on high-frequency litigants by filing their complaints in federal court, asserting federal question jurisdiction over the ADA claim and supplemental jurisdiction over the state-law claims." *Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1018 (9th Cir. 2022) (citing *Arroyo*, 19 F.4th at 1207); *see also Vo*, 49 F.4th at 1170 ("we assume ... these new requirements apply only in California state court").

    The Ninth Circuit—and district courts within the circuit—have recognized an increase in disability access claims brought in federal court. *See, e.g., Arroyo*, 19 F.4th at 1211; *Shayler*, 51 F.4th at 1017-18 (observing that in the Central District alone, "the number of ADA cases has ballooned from 3 percent of its civil docket to roughly 20 percent in recent years"); *Gilbert v. Bonfare Markets, Inc*., 2023 WL 1803398, at *4 (E.D. Cal. Feb. 7, 2023) (noting "the burden the ever-increasing number of [accessibility] cases poses to the federal courts"); *Arroyo v. Quach, Inc.,* 2023 U.S. Dist. LEXIS 18721, at *3 (N.D. Cal. Feb. 3, 2023) ("California federal courts have recently experienced a large influx of cases involving a federal claim under the ADA for failure to ensure that businesses are accessible to customers with disabilities, accompanied by a state-law claim under the Unruh Act") (citation omitted). The Ninth Circuit attributed this increase to Unruh Act plaintiffs who sought to avoid the California requirements, "by filing in a federal forum in which [they] can claim these state law damages in a manner inconsistent with the state law's requirements." *Arroyo*, 19 F.4th at 1211. As a result, the Ninth Circuit opined "the procedural strictures that California put in place have been rendered largely toothless...." *Id.*

    Having acknowledged the apparent avoidance by litigants[2] who pursue their state claims

---

[2] The Court is not required to make any finding as to whether Plaintiff qualifies as a "high-frequency litigant" in evaluating whether to exercise supplemental jurisdiction over his state law claims. The Ninth Circuit explained that requiring a district court to determine whether an individual qualifies as a high-frequency litigant or satisfied the heightened pleading standards under California law "would itself run afoul of the *Gibbs* values—especially comity." *Vo,* 49 F.4th at 1174; *see also Escobedo v. Carrillo*, 2025 WL 1569098, at *3 (E.D. Cal. June 2, 2025) ("Forcing the

in federal courts, the Ninth Circuit had "little difficulty" reaching the conclusion that "the legal landscape" concerning Unruh Act cases constitutes an exceptional circumstance within the meaning of Section 1367(c)(4). *Vo*, 49 F.4th at 1169 (citing *Arroyo*, 19 F.4th at 1214). Thus, numerous district courts in California "have declined to exercise supplemental jurisdiction over Unruh Act … claims brought alongside ADA claims." *Rutherford v. Nuway Ins. Agency Inc.*, 2021 WL 4572008, at *1 (C.D. Cal. Apr. 1, 2021).

### 2.     Compelling reasons to decline jurisdiction

The Court finds the *Gibbs* values of judicial economy and convenience weigh in favor of declining supplemental jurisdiction. Although the Court addressed the merits of the ADA claim to the extent necessary to address the motion for default judgment, it has not been required to expend a significant amount of time and resources on the action as the claims were uncontested. *See Whitaker v. Eye Phone City*, 2020 WL 7065831, at *3 (C.D. Cal. Oct. 7, 2020) (finding judicial economy did not weigh in favor of supplemental jurisdiction where the parties had not yet engaged in discovery); *see also Brooke v. Shelby Hosp. LLC.*, 2023 WL 5017996, at *2-3 (C.D. Cal. July 24, 2023) (declining supplemental jurisdiction and dismissing the state law claims when addressing a motion for default judgment, finding any concerns of judicial economy were outweighed by concerns of comity). Moreover, any inefficiencies created by the Court's decision to decline supplemental jurisdiction "are problems ultimately that resulted from [the] plaintiff's decision to file this [a]ction in federal, rather than state court." *See Whitaker v. Aftaliion*, 2020 WL 5845724, at *4 (C.D. Cal. July 23, 2020).

Fairness also weighs in favor of declining supplemental jurisdiction over the Unruh Act claim. Plaintiff is not prevented from receiving injunctive relief to remove the encountered accessibility barriers —the only relief available—under his ADA claim before the federal court. On the other hand, it would be unfair to permit Plaintiff to evade potential limitations imposed by the state on his accessibility claims. *See Schutza v. Cuddeback,* 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017); *see also Brooke v. Yang & Chang Int'l*, 2024 WL 4003180, at *4 (C.D. Cal. July 30,

---

district court to determine if Plaintiff or counsel is a high-frequency litigant would itself run afoul of the *Gibbs* values—especially comity.").

2024) (finding fairness weighed in favor of declining supplemental jurisdiction because "permitting a plaintiff to pursue construction-related accessibility claims in this Court while evading the limitations California has imposed on such claims is unfair to defendants").

Finally, comity weighs in favor of declining jurisdiction, particularly considering the state's efforts to thwart abuse of the legal system through the filing of unverified disability access claims. *See, e.g., Marquez v. KBMS Hospitality Corp.*, 492 F. Supp. 3d 1058, 1064 (C.D. Cal. 2020); *Block v. 7-Eleven, Inc.,* 2024 WL 333891, at *4 (N.D. Cal. Jan. 29, 2024) (comity weighed in favor of declining supplemental jurisdiction over state disability access claims); *see also Schutza v. Alessio Leasing, Inc.,* 2019 WL 1546950, at *4 (S.D. Cal. Apr. 8, 2019) ("By being 'inefficient' and declining to exercise supplemental jurisdiction …, this Court is simply recognizing that California has a strong interest in interpreting and enforcing its own rules without federal courts serving as a convenient end-around for creative litigants. If that results in occasional inefficiency, it's a worthwhile tradeoff.").

## IV.     Conclusion and Order

According to 28 U.S.C. § 636(b)(1), the Court performed a *de novo* review of this case. Having carefully reviewed the entire matter, the Court concludes the Findings and Recommendations are supported by the record and by proper analysis related to Plaintiff's claim under the ADA, and he is entitled to receive the injunctive relief requested. The recommended modification to the award of attorneys' fees and costs is also appropriate. However, as described above, there are "exceptional circumstances" and "compelling reasons" to decline supplemental jurisdiction over Plaintiff's claims for violations of the Unruh Act and California Health & Safety Code. Accordingly, the Court declines to adopt the recommendations related to the claims arising under state law and exercises its discretion to decline supplemental jurisdiction. Based upon the foregoing, the Court **ORDERS**:

1. The Findings and Recommendations filed on July 30, 2025 (Doc. 14) are **ADOPTED** in part.
2. The Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(c)(4).

3. Plaintiff's claims for violations of the Unruh Act and the California Health & Safety Code are **DISMISSED** without prejudice.

4. Plaintiff's motion for default judgment (Doc. 10) is **GRANTED IN PART**.

5. Judgment **SHALL** be entered in favor of Plaintiff and against Defendants.

6. Plaintiff's request for statutory damages under California's Unruh Act is **DENIED**.

7. Plaintiff's request for fees, costs, and expenses is **GRANTED**, in the modified amount of $2,895.85.

8. Plaintiff's request for injunctive relief under the ADA is **GRANTED**.

9. Defendant **SHALL** make modifications within 60 days to the facility known as "All American Glass, Inc.," located at 6111 N. Blackstone Avenue, Fresno, California 93710, to bring the property into compliance with the accessibility requirements of the Americans with Disabilities Act by:

   a. Providing a properly configured and identified accessible parking stall with an adjacent access aisle;

   b. Securing or maintaining accessible routes to the Facility entrance; and

   c. Providing and maintaining an accessible sales and service counter.

10. The Clerk of Court shall terminate pending motions and close this case.

IT IS SO ORDERED.

Dated: __August 16, 2025__

UNITED STATES DISTRICT JUDGE